**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 05-34209

MARK EVERETT BOWEN

    Debtor

**MEMORANDUM ON MOTION FOR JUDGMENT
ON THE PLEADINGS
OR FOR SUMMARY JUDGMENT**

**APPEARANCES:**    HODGES, DOUGHTY & CARSON, PLLC
    Dean B. Farmer, Esq.
    Matthew A. Birdwell, Esq.
    Post Office Box 869
    Knoxville, Tennessee  37901-0869
    Attorneys for the Debtor

    ROGERS, LAUGHLIN, NUNNALLY, HOOD, & CRUM, P.C.
    Kenneth Clark Hood, Esq.
    100 South Main Street
    Greeneville, Tennessee  37743
    Attorneys for Daniel W. Jackson, Margaret H. Olson,
      and Whole Living, Inc.

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Motion for Show Cause Hearing as to Why Daniel Jackson, Margaret H. Olson, and Whole Living, Inc. Should Not Be Held in Contempt of Court for Past and Continuing Violations of 11 U.S.C. §§ 362 and 524 (Motion for Contempt) filed by the Debtor on March 16, 2006.  By the Motion for Contempt, the Debtor seeks a determination that Daniel Jackson, Margaret H. Olson, and Whole Living, Inc. (Respondents) violated the automatic stay provisions of 11 U.S.C.A. § 362(a) (West 2004) and/or the discharge injunction imposed under 11 U.S.C.A. § 524(a) (West 2004) by prosecuting an action against him in the United States District Court for the District of Utah.[1]  The Debtor also seeks an award of actual and punitive damages and attorneys' fees for the alleged violations.  Finally, he asks the court to void an Order entered by the Utah District Court on November 29, 2005, granting attorneys' fees to the Respondents, as being in violation of the automatic stay.

On May 4, 2006, the Respondents filed a Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment (Motion for Summary Judgment),[2] arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.  The Motion for Summary Judgment was accompanied by a Statement of Undisputed Facts and is supported by

---

[1] The Debtor commenced his bankruptcy case prior to the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  All statutory citations are, therefore, to the Bankruptcy Code in effect prior to October 17, 2005.

[2] To the extent the Respondents seek a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, their motion will not be considered because Rule 12 has no application to contested matters.  *See* FED. R. BANKR. P. 9014(c).  This in no way limits the Respondents, however, because they seek a summary judgment as alternative relief and, were Rule 12(c) applicable, the court would, in accordance with that Rule, treat the present motion as one for summary judgment to be disposed of pursuant to Federal Rule of Civil Procedure 56, which is made applicable to this contested matter by Rule 9014(c) of the Federal Rules of Bankruptcy Procedure.  *See* FED. R. CIV. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]").

a Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings or in the Alternative, for Summary Judgment. On May 11, 2006, the Respondents filed the Affidavit of Daniel W. Jackson, which refers to the following exhibits attached thereto, all of which were filed in or are otherwise affiliated with a civil action pending in the United States District Court for the District of Utah, styled *Whole Living, Inc. v. Tolman, et al.*, Case No. 2:03CV-0272 (Utah Civil Action):[3] (A) "Plaintiff's Motion For: (1) Temporary Restraining Order Enforcing Preliminary Injunction; (2) an Order to Show Cause; (3) Contempt" filed on May 4, 2004; (B) "Order Granting Plaintiff's Motion for a Preliminary Injunction and Preliminary Injunction" entered on August 4, 2004; (C) transcript from a "Motion for Contempt Hearing" held on May 17, 2004; (D) transcript from the "Motion for Contempt Hearing Continued from May 17, 2004" held on May 20, 2004; (E) "Memorandum Decision and Order Finding Defendants in Contempt for Violation of Court Order" entered on November 29, 2004; (F) "Plaintiff's Motion for an Order to Show Cause Against Defendant Mark Bowen" filed on March 1, 2006, by the Respondents; (G) "Motion for Entry of Order of Abatement" with attached "Memorandum in Support of Motion for Entry of Order of Abatement" with a signature line for the Respondents;[4] and (H) the PACER docket sheet, dated May 3, 2006, evidencing all documents filed in the Utah Civil Action from March 17, 2003, the date the Complaint commencing that action was filed, and continuing through April 4, 2006, the date of the last entry.

---

[3] The Respondents filed Mr. Jackson's supporting affidavit with the Motion for Summary Judgment on May 4, 2006. However, because the Affidavit was not properly signed or authenticated, an appropriately executed Affidavit of Daniel W. Jackson was filed on May 11, 2006.

[4] The copy filed by Mr. Jackson with his Affidavit is neither signed nor dated. The court cannot, therefore, ascertain whether this document was actually filed in the Utah Civil Action and if so, on what date.

The Debtor filed his Response to Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment and Motion for Protective Order of Defendants Daniel W. Jackson, Margaret H. Olson, and Whole Living, Inc. on June 13, 2006, and an Amended Debtor's Response to Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment and Motion for Protective Order of Defendants Daniel W. Jackson, Margaret H. Olson, and Whole Living, Inc.[5] (Response) on June 19, 2006, incorporating therein a supporting memorandum of law. In further support of his Response, the Debtor relies upon the following: (1) the Deposition of Don Tolman taken May 10, 2006, along with the twenty-seven exhibits thereto; (2) the Affidavit of Mark S. Dessauer which includes a copy of a letter dated January 6, 2006 to the Respondent, Daniel W. Jackson, from Mr. Dessauer; (3) the Affidavit of Mark Everett Bowen which references two exhibits, "Award of Attorney Fees and Costs" entered on November 29, 2005, in the Utah Civil Action and an email dated November 23, 2005, from Mr. Jackson to Mr. Dessauer; and (4) the exhibits attached to his Motion for Contempt, consisting of (A) the Corrected Affidavit of Mark Everett Bowen dated March 6, 2006; (B) "Complaint" filed on March 17, 2003, commencing the Utah Civil Action; (C) "Order Granting Plaintiff's Motion for a Preliminary Injunction and Preliminary Injunction" entered in the Utah Civil Action on August 4, 2004; (D) "Memorandum Decision and Order Finding Defendants in Contempt for Violation of Court Order" entered in the Utah Civil Action on November 29, 2004; (E) "Notice of Compliance Agreement Between Think Again, Inc. and Don Tolman" filed in the Utah Civil Action on December 20, 2004; (F) the mailing matrix from the Debtor's bankruptcy case; (G) "Order Granting Plaintiff's Motion to Dismiss Third Amended Complaint Against Think Again, Inc. Without Prejudice" entered in the Utah Civil Action

---

[5] The Motion for Protective Order included in the Debtor's Response has been resolved and is not at issue.

on September 28, 2005; (H) Letter dated December 20, 2005, from the Debtor's bankruptcy attorneys to Mr. Jackson and Ms. Olson; (I) Letter dated January 3, 2006, from the Debtor's bankruptcy attorneys to Mr. Jackson and Ms. Olson; (J) "Stipulation for Dismissal With Prejudice" in the Utah Civil Action dated January 4, 2006; (K) "Stipulation of Dismissal With Prejudice" dated January 17, 2006, executed by the Debtor's bankruptcy attorney; (L) "Plaintiff's Motion for an Order to Show Cause Against Defendant Mark Bowen" and the accompanying "Memorandum in Support of Plaintiff's Motion for an Order to Show Cause Against Defendant Mark Bowen" filed in the Utah Civil Action on March 1, 2006, by the Respondents; and (M) "Trial Order" entered on November 29, 2005, in the Utah Civil Action. Additionally, the Debtor's Response to Statement of Undisputed Facts was filed on June 13, 2006. On June 23, 2006, the Respondents filed their Reply to the Debtor's Response.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) and (O) (West 1993).

**I**

For the purposes of the Motion for Summary Judgment, the parties have agreed that the following material facts are undisputed. On March 17, 2003, Whole Living, Inc., by and through its attorneys, Mr. Jackson and Ms. Olson, filed the complaint commencing the Utah Civil Action against Don Tollman, Mark Bowen, and Think Again, Inc., a Tennessee Corporation, d/b/a Great

5

American, The Wholefood Farmacy,[6] asserting claims grounded on breach of contract, violation of the Uniform Trade Secrets Act, common law misappropriation, and civil conspiracy and seeking injunctive relief. A temporary restraining order was entered on April 10, 2003 against Think Again, Inc. d/b/a Great American Wholefood Farmacy (Think Again) and Mr. Tollman, prohibiting certain actions forming the basis of the Utah Civil Action. Thereafter, on August 4, 2003, a preliminary injunction was entered in the Utah Civil Action against Think Again, Mr. Tolman, and the Debtor (August 4, 2003 Injunction).

On May 4, 2004, Whole Living filed a motion in the Utah Civil Action alleging that Think Again, Mr. Tolman, and the Debtor were in contempt of the August 4, 2003 Injunction and sought civil and criminal sanctions for their willful violations of the injunction order. The district court held an evidentiary hearing on the contempt issues on May 17, 20, and 21, 2004, at which Whole Living presented evidence in support of its motion for sanctions. Think Again, Mr. Tolman, and the Debtor were present and "actively" participated in the hearing. At the start of the evidentiary hearing on May 17, 2004, the judge in the Utah Civil Action directed Mr. Jackson to focus the hearing on meeting the civil contempt standards rather than the more stringent requirements for criminal contempt. Specifically, the district court gave Mr. Jackson the following instruction:

> The Court would like to instruct you, Mr. Jackson, that although you have sought in this case criminal contempt as well as civil contempt, although the Court is convinced that probably if you wanted to pursue the criminal contempt that there is probably sufficient evidence for it, that the amount of time that would be taken to pursue the criminal contempt as well as the extra procedural requirements that would be required in the Court's mind are not yet justified and would ask that you focus on

---

[6] The Complaint was initially styled *Whole Living, Inc., a Nevada corporation doing business as The Brain Garden v. Don Tolman, an individual, John Does 1-100, and Corporation Does 1-100. See* MOT. FOR CONTEMPT, EX. B.

       meeting the civil contempt standards and then we can decide whether or not to pursue the criminal thereafter.

JACKSON AFF. ¶ 7; EX. C (*Transcript*, at 5, lines 13 through 23).

On November 29, 2004, the district court filed a Memorandum Decision and Order Finding Defendants in Contempt for Violation of Court Order, finding the Debtor and other party-defendants to the Utah Civil Action in contempt for violating the August 4, 2003 Injunction, awarding Whole Living a judgment for business damages in the amount of $240,430.91, and awarding attorneys' fees and costs in an amount to be determined at a later date. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the court found that there was no just reason for delaying entry of the judgment in favor of Whole Living. None of the defendants against whom judgment was rendered appealed the court's judgment. On November 29, 2005, the district court issued a "memorandum opinion"[7] in the Utah Civil Action, awarding Whole Living, Inc. attorneys' fees of $47,428.00 and costs of $1,442.73 associated with the business damages judgment to Whole Living and against the Debtor without any prompting or action having been taken by or on behalf of Whole Living (Order Granting Attorneys' Fees).

On December 8, 2004, Think Again filed a petition commencing bankruptcy case number 04-24141 in the United States Bankruptcy Court for the Eastern District of Tennessee, Northeastern Division. On December 10, 2004, Think Again, Mr. Tolman, and the Debtor entered into a Compliance Agreement in the Utah Civil Action, memorializing Think Again's and the Debtor's

---

[7] "Memorandum Opinion" is the term stipulated by the parties. The document itself, while not part of the record before the court, was docketed by the district court clerk as an "order." *See* JACKSON AFF. ¶¶ 14, 16; EX. H (*Docket Sheet,* at 25).

intentions to compel Mr. Tolman to remain in compliance with the injunction.

The Debtor filed the Voluntary Petition commencing his case under Chapter 7 of the Bankruptcy Code on August 5, 2005. Whole Living, Mr. Jackson, and Ms. Olson were listed on the Debtor's mailing matrix filed contemporaneously with his petition, statements, and schedules.[8] The Debtor was granted a discharge on December 14, 2005.

On March 1, 2006, the Respondents filed a document entitled "Plaintiff's Motion for an Order to Show Cause Against Defendant Mark Bowen" (Motion for Criminal Contempt) in the Utah Civil Action, asking the district court to find the Debtor in "criminal contempt" for alleged violations of the August 4, 2003 Injunction (Motion for Criminal Contempt). A hearing on the Motion for Criminal Contempt has been stayed pending resolution of the Motion for Contempt filed in this court by the Debtor on March 16, 2006.

## II

Summary judgment is appropriate, pursuant to Federal Rule of Civil Procedure 56, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (applicable in contested

---

[8] While it does not appear that the Respondents dispute that they received notice of the commencement of the Debtor's bankruptcy case, the court nonetheless takes judicial notice that the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines issued by the clerk on August 11, 2005, was served on Daniel W. Jackson and Whole Living, Inc., c/o Margaret H. Olson on August 13, 2005. *See* FED. R. EVID. 201.

matters by virtue of Rule 9014(c) and Rule 7056 of the Federal Rules of Bankruptcy Procedure). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted, but instead, simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).

The moving party bears the initial burden of proving that there are no genuine issues of material fact, thus entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the nonmoving party to produce specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) (citing FED. R. CIV. P. 56(e)). The nonmoving party must cite specific evidence and may not merely rely upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party, *Matsushita*, 106 S. Ct. at 1356, and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 106 S. Ct. at 2510.

Having reviewed the Motion for Summary Judgment, the Debtor's Response, the Statement of Undisputed Facts, the Affidavits, and all exhibits, the court finds that genuine issues of material fact exist to preclude entry of summary judgment. In his Motion for Contempt, the Debtor avers that the Respondents violated the automatic stay and thereafter the discharge injunction by not

dismissing him from the Utah Civil Action and by filing the Motion for Criminal Contempt. The Respondents argue that the August 4, 2003 Injunction is not a dischargeable claim in bankruptcy and that criminal actions are excepted from the automatic stay and the discharge injunction, so therefore, their Motion for Criminal Contempt is proper.

### A

The commencement of the Debtor's bankruptcy case triggered the protection of the automatic stay, set forth in § 362(a), which provides, in material part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, . . . operates as a stay, applicable to all entities, of —
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate;
>
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (7) the setoff of any debt owing to the debtor that arose before the

>commencement of the case under this title against any claim against the debtor; and
>
>(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

11 U.S.C.A. § 362(a) (West 2004). The purpose of the automatic stay is to provide debtors with "a breathing spell," *see In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001), and "§ 362(a)(1) imposes an affirmative duty [upon creditors] to discontinue post-petition collection actions." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002). "The stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted." *NLT Computer Servs. Corp. v. Capital Computer Sys., Inc.*, 755 F.2d 1253, 1258 (6th Cir. 1985). Actions taken in violation of the automatic stay are "invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

A party with knowledge of a debtor's bankruptcy case who nevertheless deliberately carries out a prohibited act outlined by § 362(a) willfully violates the automatic stay, and

>[a] specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.
>
>Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

*Printup*, 264 B.R. at 173 (quoting *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)); *see also In re Dunning*, 269 B.R. 357, 362 (Bankr. N.D. Ohio 2001) (a willful violation of the automatic stay does not require a specific intent to violate the stay). If the court determines that a willful

violation occurred, and the debtor suffered any injury due to the violation, the statute mandates an award of actual damages, including costs and attorneys fees, and "in appropriate cases, [the debtor] may recover punitive damages." 11 U.S.C.A. § 362(h) (West 2004). Generally, however, an award of punitive damages requires a showing of egregious and intentional misconduct. *In re Kortz*, 283 B.R. 706, 713 (Bankr. N.D. Ohio 2002).

On the other hand, criminal prosecution is an exception to the automatic stay. 11 U.S.C.A. § 362(b)(1) ("The filing of a petition under section 301 . . . of this title . . . does not operate as a stay . . . of the commencement or continuation of a criminal action or proceeding against the debtor[.]"). In other words, in order to "assist[] the prosecuting authorities in their rightful duties in protecting society by punishment for violation of the criminal laws[,]" parties may pursue criminal actions against a debtor without violating the stay. *Williamson-Blackmon v. Kimbrell's of Sandford, N.C., Inc. (In re Williamson-Blackmon)*, 145 B.R. 18, 21 (Bankr. N.D. Ohio 1992) (citations omitted).

The automatic stay remains in effect throughout a debtor's bankruptcy. The natural termination of the automatic stay is set forth in 11 U.S.C.A. § 362(c), which provides:

> (c) Except as provided in subsections (d), (e), and (f) of this section [concerning relief from the stay] —
>
> > (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and
> >
> > (2) the stay of any other act under subsection (a) of this section continues until the earliest of —
> >
> > > (A) the time the case is closed;

>    (B) the time the case is dismissed; or
>
>    (C) if the case is a case under chapter 7 of this title concerning an individual . . ., the time a discharge is granted or denied.

11 U.S.C.A. § 362(c) (West 2004).

In addition to terminating the automatic stay, entry of the discharge order triggers the "discharge injunction," which provides, in material part, as follows:

> (a) A discharge in a case under this title —
>
>   (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, whether or not discharge of such debt is waived; [and]
>
>   (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, . . . [.]

11 U.S.C.A. § 524(a)(2). By virtue of § 524(a)'s permanent injunction, debtors are no longer liable for any pre-petition debts. *See In re Leonard*, 307 B.R. 611, 613 (Bankr. E.D. Tenn. 2004) ("Section 524(a) was designed to 'ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it.'") (quoting *Stoneking v. Histed (In re Stoneking)*, 222 B.R. 650, 652 (Bankr. M.D. Fla. 1998) (quoting H.R. REP., NO. 595, 95th Cong., 1st Sess. 364 (1977)).

"The traditional remedy for violation of [the § 524(a)(2)] injunction lies in contempt proceedings[.]" *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000); *see also In re Williams*, 291 B.R. 445, 452 (Bankr. E.D. Tenn. 2003); *Kanipe v. First Tenn. Bank (In re Kanipe)*, 293 B.R. 750, 755 (Bankr. E.D. Tenn. 2002). In summary,

13

>the rule in the Sixth Circuit is that a debtor injured by a violation of the discharge injunction has no right to statutory damages. Instead, when a violation of the discharge injunction does occur, a debtor's sole avenue of recourse – and the one for which the traditional remedy for a violation of a court order – is to bring an action against the creditor for contempt.

*In re Perviz*, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003).

The Motion for Contempt alleges that the Respondents violated the automatic stay by continuing their prosecution of the Utah Civil Action against the Debtor during the pendency of his bankruptcy case, during which time, the November 29, 2005 Order Granting Attorneys' Fees was entered by the district court, assessing the Debtor with attorneys' fees and costs associated with the pre-petition contempt order entered on November 29, 2004, and that they continue to violate the discharge injunction by their continued prosecution of the Utah Civil Action, including the filing of the Motion for Criminal Contempt. The Debtor's Motion for Contempt does not, however, allege that the Respondents took any action to precipitate entry of the November 29, 2005 Order Granting Attorneys' Fees. Instead, the Debtor argues that the Respondents violated the automatic stay by failing to notify the Utah District Court that the Debtor's bankruptcy case was pending, which resulted in the Order Granting Attorneys' Fees being entered during the pendency of the Debtor's case and by failing to dismiss the Utah Civil Action against the Debtor.

The court cannot ascertain from the record before it whether the Respondents violated the automatic stay for failing to dismiss the Utah Civil Action against the Debtor. Specifically, the record does not contain a copy of the Amended Complaint in the Utah Civil Action wherein the Debtor was named as a party defendant and relief was sought against him. Accordingly, genuine

14

issues of material fact remain such that the court cannot make a determination as to whether the Respondents' failure to dismiss the Utah Civil Action against the Debtor violated the automatic stay and continues to violate the discharge injunction. Although the Respondents argue this question does not present a factual dispute, the court disagrees. The purposes behind the Respondents' actions, as well as what relief they seek through the continued prosecution of the Utah Civil Action, are wholly factual and entirely relevant to whether the automatic stay and/or the discharge injunction have been violated.

**B**

As previously stated, the prosecution of criminal actions is excepted from the automatic stay by virtue of § 362(b)(1), and the Respondents argue that the filing of their Motion for Criminal Contempt on March 1, 2006, does not violate the automatic stay. However, the automatic stay terminated on December 16, 2005, when the Debtor's discharge was entered. Therefore, when the Respondents filed the Motion for Criminal Contempt on March 1, 2006, the stay was no longer in effect, having been replaced by the discharge injunction.

In order to determine whether the Respondents violated the discharge injunction when they filed the Motion for Criminal Contempt, it is necessary to examine the relief sought therein. The Motion for Criminal Contempt consists of a single paragraph whereby Whole Living, Inc., with no specific averments of wrongdoing, "moves this Court for an order to show cause why defendant

Mark Bowen should not be held in criminal contempt[9] and incarcerated for his violations of this Court's Order Granting Plaintiff's Motion for a Preliminary Injunction." JACKSON AFF. ¶ 15; EX. F.

> Criminal proceedings are classified as either civil or criminal depending on their primary purpose. Orders whose purpose is to coerce compliance with a court order or to compensate another party for the contemnor's violation are considered to be civil contempt. Stated another way, civil contempt operates to vindicate the private rights of a party in litigation. The penalty assessed under a civil contempt order is meant to compensate the party or to coerce compliance with a court order for the other party's benefit. Orders which permit the debtor to avoid punishment by

---

[9] Rule 42 states as follows:

(a) Disposition After Notice. Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.

    (1) Notice. The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:

        (A) state the time and place of the trial;

        (B) allow the defendant a reasonable time to prepare a defense; and

        (C) state the essential facts constituting the charged criminal contempt and describe it as such.

    (2) Appointing a Prosecutor. The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.

    (3) Trial and Disposition. A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides. If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

(b) Summary Disposition. Notwithstanding any other provision of these rules, the court (other than a magistrate judge) may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies; a magistrate judge may summarily punish a person as provided in 28 U.S.C. § 636(e). The contempt order must recite the facts, be signed by the judge, and be filed with the clerk.

FED. R. CRIM. P. 42.

> complying with the court's directive are considered to be civil contempt orders.
>
> Where the order's purpose is to punish a party or to vindicate the authority of the court, it is viewed as criminal contempt. Criminal contempt orders are intended to sanction offenses against public justice and to compel respect for court orders. Orders which incarcerate a party for a definite period of time, or which impose[] a penalty without the opportunity to comply and cure the offense do not redress a private right and are considered criminal contempt orders. A key determinant of whether an order constitutes civil or criminal contempt is whether the penalty imposed is absolute or conditional on the contemnor's conduct.

*In re Wiley*, 315 B.R. 682, 687-88 (Bankr. E.D. La. 2004) (footnotes omitted).

"The labels affixed to a proceeding or relief imposed, however, are not controlling." *Merriweather v. Sherwood*, 250 F. Supp. 2d 391, 394 (S.D.N.Y. 2003). "The character and purpose of the action determine whether civil or criminal contempt is involved." *In re Crabtree*, 39 B.R. 702, 709 (Bankr. E.D. Tenn. 1984). "A district court's characterization of a proceeding as either civil or criminal is not determinative. . . . '[I]n deciding whether a proceeding . . . refers to civil or criminal contempt, the . . . court is required to look to the purpose and character of the sanctions imposed, rather than to the label given to the proceeding by the court below.'" *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1401 (6th Cir. 1991) (quoting *In re Kave*, 760 F.2d 343, 351 (1st Cir. 1985)).

> [T]here is no bright-line test that necessarily differentiates an acceptable punitive contempt order from an unacceptable coercive contempt order. All of the facts and circumstances must be considered. Generally, if the contempt order seeks to vindicate the private rights of the litigants by holding the specter of punishment over the head of the recalcitrant party, it will be considered a coercive contempt order that is stayed by the automatic stay [or prohibited by the discharge injunction]. If, however, it is intended to punish the recalcitrant party for past misconduct and thereby vindicate the dignity of the issuing court, it will be considered a punitive contempt order and not be stayed by the automatic stay.

*In re Dill*, 300 B.R. 658, 667 (Bankr. E.D. Va. 2003).

"[T]he distinction between civil and criminal contempt turns on 'the substance of the proceedings and the character of the relief that the proceeding will afford.'" *Merriweather*, 250 F. Supp. 2d at 393 (quoting *Hicks v. Feiock*, 108 S. Ct. 1423, 1429 (1988)). "Broadly, the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant. Whereas, the purpose of criminal contempt is punitive – 'to vindicate the authority of the court.'" *Bayshore Assocs.*, 934 F.2d at 1400 (quoting *Gompers v. Bucks Stove & Range Co.*, 31 S. Ct. 492, 498 (1911)) (internal citations omitted). "On the other hand, if the underlying purpose in continuing the contempt action is 'calculated to enforce a money judgment, pursue a 'collection motive,' or to harass a defendant,' then relief from the stay is not appropriate." *In re Lincoln*, 264 B.R. 370, 374 (Bankr. E.D. Pa. 2001) (quoting *In re Rook*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989)).

The March 1, 2006 Motion for Criminal Contempt purports to request criminal sanctions, including incarceration, against the Debtor "for his violations of this Court's Order Granting Plaintiff's Motion for a Preliminary Injunction." This is the same relief sought, in part, by the Respondents in the May 4, 2004 Plaintiff's Motion for: (1) Temporary Restraining Order Enforcing Preliminary Injunction; (2) An Order to Show Cause; (3) Contempt Filed in the Utah Civil Action. As noted by the district court at the May 17, 2004 hearing on the May 4, 2004 contempt motion, the difference in civil and criminal contempt is the degree of proof and "extra procedural requirements." *See* quote *supra* at 6-7.

Based upon the record before the court, the Respondents' true motive behind the March 1, 2006 Motion for Criminal Contempt, which, as noted, contains no averments of specific

wrongdoing,[10] remains unclear and in dispute. As such, the court cannot ascertain the true character and purpose for the requested sanctions, and accordingly, cannot make a determination whether the Motion for Criminal Contempt violates the discharge injunction. Material issues of fact are clearly present.

An Order denying the Respondents' Motion for Summary Judgment will be entered.

FILED: July 19, 2006

                                            BY THE COURT

                                            /s/ RICHARD STAIR, JR.

                                            RICHARD STAIR, JR.
                                            UNITED STATES BANKRUPTCY JUDGE

---

[10] Federal Rule of Civil Procedure 7(b), entitled "Motions and Other Papers," requires, in material part, that an "[a]pplication to the court for an order shall be by motion which . . . shall state with particularity the grounds therefor, and shall set forth the relief or order sought." FED. R. CIV. P. 7(b)(1).